UNITED STATES DISTRICT COURT for the
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SCHOONER CREEK FARM, <br> SARAH DYE, and <br> DOUGLAS MACKEY, <br><br> Plaintiffs, <br> v. <br><br> CITY OF BLOOMINGTON, INDIANA, <br><br> And, <br><br> JOHN HAMILTON, in his official capacity as Mayor of the City of Bloomington, Indiana and in his individual capacity, <br><br> And, <br><br> PAULA MCDEVITT, in her official capacity as Administrator of the Bloomington Parks and, Recreation Department and in her individual capacity, <br><br> And, <br><br> MARCIA VELDMAN, in her official capacity As the Program Coordination for the Bloomington Community Farmers Market  and in her Individual capacity, <br><br> Defendants. | Case No. 1:20-CV-518 <br><br> **A jury trial is requested.** |

# **COMPLAINT**

Plaintiffs, Schooner Creek Farm ("SCF"), Sarah Dye, and Douglas Mackey (collectively, "Plaintiffs"), by counsel and pursuant to 42 U.S.C. § 1983, for their Complaint against Defendant, City of Bloomington, Indiana ("Bloomington"), state as follows:

## I. Parties.

1. Schooner Creek Farm is an unincorporated entity in the agriculture business with its principal place of business in Brown County, Indiana.

2. Sarah Dye is a partner in Schooner Creek Farm and a resident of Brown County, Indiana.

3. Douglas Mackey is a partner in Schooner Creek Farm and a resident of Brown County, Indiana.

4. Defendant, City of Bloomington, Indiana is a municipality located in Monroe County, Indiana.

5. Defendant, John Hamilton, is the duly elected mayor of the City of Bloomington and its chief executive agent.

6. Defendant, Paula McDevitt, is the duly appointed Administrator of the Bloomington Parks and Recreation Department.

7. Defendant, Marcia Veldman, is the duly appointed Program Coordinator for the Bloomington Community Farmers' Market.

## II. Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367. The claims herein arise under the First Amendment to the Constitution of the United States, the Fourteenth Amendment to the Constitution of the United States, and Article One of the Constitution of the State of Indiana.

9. This Court has personal jurisdiction of the Defendants because the Defendants are located within this District, and engaged in wrongdoing in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391 (b)(1) & (2).

### III.  Factual Background

11. SCF is a family operated farm. Its primary produce is vegetable products: Snap Peas, Cucumbers, Sweet Potatoes, and the like.

12. SCF's primary source of income is the sale of its produce at the Bloomington Community Farmer's Market ("Market").

13. The Market is, quite literally, the public square, and exists as a traditional public forum within the City of Bloomington.

14. SCF has rented vending space at the Market for approximately a decade.

15. The Market is operated by the Bloomington Parks and Recreation Department with input from the Farmers Market Advisory Council.

16. As a vendor at the Market, SCF's conduct within the Market is governed, in part, by the <u>Bloomington Community Farmers' Market Farm Vendor Contract</u> and the <u>Farm Vendor Handbook</u>.

17. In or about May, 2019, various non-parties to this suit, via their social media accounts, publicly alleged SCF and its proprietors were Nazis and/or white supremacists.

18. The defamatory statements continued, and still continue, to circulate around social media. Ultimately, SCF, Ms. Dye, and Mr. Mackey were doxed[1] on or about June 1, 2019.

19. On June 8, 2019, following the doxing, protesters began attending the Market. The protesters would position themselves in front of the SCF vending space and solicit a boycott of SCF.

---

[1] Dox: to publicly identify or publish private information about (someone) especially as a form of punishment or revenge. *www.merriam-webster.com/dictionary/dox*

20. On June 8, 2019, SCF requested the assistance of the City in removing the protesters through Program Coordinator, Marcia Veldman. Ms. Veldman advised SCF that the City would not take action against the protesters.

21. Throughout June and July, 2019 the protesters continued to appear at the Market each Saturday and continually escalated their efforts to solicit a boycott of SCF and interfere with SCF's commerce.

22. On June 17, 2019, Bloomington Mayor, John Hamilton, made a public statement regarding the Market in which he accepted the allegations regarding SCF's political positions as true, lamented the restrictions the First Amendment placed on governments, and called for the community to intervene where the local government could not. From his statement, in relevant part:

> Recent allegations about a vendor at our City's farmers market having white-supremacist affiliations have alarmed and activated our community. Including me, personally and as Mayor. . .
>
> The City will not tolerate any vendor displays or behaviors at the market inconsistent with [the] fundamentally welcoming environment. We will vigorously protect against any behaviors that threaten those values. On the other hand, we must also comply with the US Constitution's First Amendment, which prohibits governments from restricting individuals' rights to believe and speak as they choose, within very wide ranges, including those who sell at (or attend) a City-run farmers market.
>
> Repeatedly and consistently throughout the last century, the US Supreme court has said that government may not silence or punish people for disfavored beliefs, in cases involving viewpoints including Communists, anarchists, civil rights protesters, and Nazis. Our constitutional government's prescription for odious speech isn't government control or censorship. It's MORE SPEECH. That is, our community, including this Mayor, can make clear our values, even when our government cannot directly intervene.

23. On or about June 17, 2019, a public petition was submitted to the Market through its Farmers' Market Advisory Counsel seeking the expulsion of SCF from the Market ("Petition").

24. The Petition alleged that SCF and Ms. Dye held a political position that the petitioners believed created a hostile and unsafe atmosphere in the Market.

25. The Petition threatened its petitioners would file a complaint with the Indiana State Department of Health and the US Department of Agriculture Assistant Secretary of Civil Rights against the Market if the Market failed to take action against SCF.

26. Publicly available copies of the Petition omit the signatories other than the author, activist Abby Ang, however, the Petition states to have the support of 230 residents.

27. On June 27, 2019 the City published its, "Clarification of Long-standing Rules of Behavior for the Bloomington Community Farmer's Market".

28. The Long-Standing Rules of Behavior provide the time, place, and manner restrictions on political speech in the Market. The Rules of Behavior state that Signs and distribution of literature by the public is permitted in designated areas around the Market boundaries, but prohibited within the Vendor area.

29. The Rules of Behavior also outline the steps the City is required to take to enforce its time, place, and manner restrictions, stating:

- Interruption of commerce is not permitted;
- Individuals interrupting the Market by yelling or causing a scene is not permitted;
- Market staff will ask any persons causing disruption to relocate to a free speech area;
- If this is not successful market staff or vendor will contact BPD;
- BPD will reiterate request to move if not compliant this will lead to arrest.

30.     The Rules of Behavior are consistent with the Farm Vendor Handbook which requires that information sharing occur only in a designated area: "Information Alley". Information Alley participants are required to pay a $10 application fee as well as a $10 daily space fee. Information Alley is the designated public forum for expressive activity within the Market; expressive activity is otherwise prohibited in the vending space.

31.     At the Market of July 20, 2019, the ongoing protests escalated further to include members of the self-proclaimed anti fascists, Antifa black bloc. The black bloc protesters, clad in black hoods, black sunglasses, and black masks, blockaded the SCF vending space.

32.     On or about July 31, 2019, Mayor Hamilton announced the Market would be closed for the following two weeks and, again, made a public statement regarding the Market. In this statement, the Mayor announced his support for the boycotters:

> As a community, then, one thing we must do together is fight against racism and bigotry and their legacies, wherever they arise, including at our Farmers' Market. Like many, I have spoken out condemning connections to white supremacy in our market. We know active community member have organized education and advocacy campaigns, as well as economic responses including boycotts, and I am fully supportive of those efforts.

33.     During the two-week closure of the Market, local activist group, No Space for Hate ("NSFH"), a group organized specifically to respond to SCF's presence in the Market, posted numerous articles and reports on its website and on its Facebook page calling for boycotts of SCF, publishing photos of Ms. Dye, and implying SCF was somehow linked to white supremacist violence elsewhere in the United States.

34. On August 13, 2019, Mayor Hamilton, again, made a public statement regarding the Market. The Mayor announced the pending reopening of the Market on August 17, 2019. In his statement, Mayor Hamilton analogized the "local situation" to recent instances of mass shootings in El Paso, Texas and Dayton, Ohio and called for a community response:

> Our community market faces a community challenge that must be met with a community response. . . Of particular note are the focused efforts from advocates and volunteers, organized as "No Space for Hate," directly to address issues at the Farmers' Market.

35. Mayor Hamilton's repeated public statements endorsing those who would harass SCF in an effort to force them from the Market displays a callous disregard for the Plaintiff's Constitutional rights.

36. The Market provided NSFH with an area to set up a tent as well as information about where NSFH could disseminate information. The Market waived the fees normally required of groups who wish to disseminate information at the Market.

37. On August 17, 2019, the Market reopened as scheduled. Protesters, apparently members of NSFH, attended the market to solicit a boycott of SCF.

38. The NSFH protesters marched back and forth in front of the SCF vending space, or simply stood still in front of the space, wearing purple t-shirts with a quote by political activist, Cornel West, on the front and the phrase, "**Boycott Schooner Creek – Defund White Supremacy**" on the back. This particular subset of protesters has been referred to as "The Purple Shirt Brigade" in local media.

39. The Purple Shirt Brigade formed a physical barrier restricting Market shoppers' access to SCF vending space and attempted to persuade shoppers transacting with SCF to cease doing business with SCF.

40. The Purple Shirt Brigade was allowed to disrupt commerce at the Market and protest at the Market in violation of the Market Rules of Behavior. The City refused to enforce its own time, place, and manner restrictions and allowed NSFH and the Purple Shirt Brigade to proceed with its boycott.

41. Program Coordinator, Marcia Veldman, acknowledged in an interview on September 23, 2019 she chooses to selectively enforce the Market's time, place, and manner restrictions in favor of The Purple Shirt Brigade.

42. The Purple Shirt Brigade and NSFH have actively protested at each and every Saturday Market since, at least, August 17, 2019.

43. SCF has repeatedly requested the City uniformly enforce its time, place, and manner restrictions in the Market; the City has repeatedly declined to do so to SCF's detriment.

44. The City responded to the repeated disruptions in the Market, not by enforcing its Rules of Behavior against the protesters, but by having the Bloomington Police Department ask SCF to relocate its vending space from its prime, center-Market location to a space on the periphery of the Market.

45. The City further responded to the repeated disruptions in the Market, by coercing SCF into terminating its relationship with its longtime stand-assistant alleging that the mere presence of the stand-assistant made the protesters uncomfortable. The stand

assistant was absent from the Market for several weeks and his relationship with SCF was only restored by SCF's request to the City through counsel.

46. On September 12, 2019, the City requested SCF attend a mediation with City officials. At the mediation, the City requested that SCF refrain from posting political signage in its vending space. SCF has complied with the City's request.

47. The Defendants have allowed the Purple Shirt Brigade, at all times, to display its political signage in the vending area of the Market, including the area directly in front of and around SCF's vending space.

48. At the mediation, the City requested that SCF refrain from advocating for any political position in a manner that would suggest the position is endorsed by the Market.

49. The Defendants have publicly endorsed the political activism in the Market by the Purple Shirt Brigade and NSFH.

50. At the mediation, the City requested that SCF refrain from any political discourse of any kind at the Market, unless the discourse was restricted to the Information Alley.

51. The Defendants have allowed, and continue to allow, The Purple Shirt Brigade and NSFH to engage in its political discourse, discourse specifically targeted at SCF, outside of Information Alley, within the Market vending space, and in violation of the City's own, published, time, space, and manner restrictions on public speech in the Market.

52. Where the City could not, as Mayor Hamilton stated, "directly intervene" against SCF, it has instead indirectly intervened through its selective enforcement of its

own rules. It has done so to SCF's detriment and in violation of the First and Fourteenth Amendments to the Constitution of the United States of America and in violation of Article One, Section 9 of the Constitution of the State of Indiana.

53. SCF, Sarah Dye, and Douglas Mackey seek redress for the deprivation of their rights, privileges, and immunities secured by the Constitution of the United States of America and by the Constitution of the State of Indiana as follows:

### IV – Claims pursuant to 42 U.S.C. 1983

**COUNT 1 – Violation of the Free Speech Clause of the First Amendment**

54. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

55. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the Constitution of the United States, prohibits viewpoint discrimination by a government entity.

56. Defendants' prohibiting SCF's political speech in the Market while endorsing that of the protesters including, but not limited to, NSFH and The Purple Shirt Brigade constitutes viewpoint discrimination.

57. Defendants' prohibitions make a distinction based on the motivating ideologies of the speakers, in this case the differing viewpoints between SCF and the groups that boycott SCF.

58. Defendants' waiver of the rental fees for NSFH space rental while requiring SCF to pay a rental fee if it were to utilize an information space imposes a financial burden on SCF based on the perception of their particular view and constitutes viewpoint

discrimination. The rental fee is an access barrier which must be reasonable and viewpoint neutral; Defendants' selective waiver is, on its face, not viewpoint neutral.

59. Defendants' selective enforcement of its regulations relating to the time, place, and manner restrictions on speech in the Market based on the perception of the particular views of the speaker constitutes viewpoint discrimination. The content discrimination here is not intended to preserve the purpose of the Market as a public forum, but rather to humiliate SCF and coerce its exit from the Market.

60. Defendants' time, place, and manner restrictions on speech in the Market, as applied and enforced, are not narrowly tailored to achieve a compelling government interest.

61. Defendants' conduct chills and deters the free expression of differing political view points within the public square and violates SCF's right to Free Speech under the First Amendment to the Constitution of the United States.

62. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**COUNT II – Violation of the Free Speech Clause of the First Amendment**

63. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

64. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the Constitution of the United States, prohibits content-based, prior restraint on speech.

65. Defendants' prohibition on SCF's displaying political signage in the Market based on the Defendants' perception of the content of the signage constitutes prior restraint.

66. Defendants' prohibition of SCF's engaging in any political discourse in the Market based on the Defendants' perception of the content of the discourse constitutes prior restraint.

67. As a result of the Defendants' conduct SCF has been deprived of a Constitutionally protected right.

**COUNT III – Violation of the Right to Free Association under the First Amendment**

68. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

69. The First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment to the Constitution of the United States, recognizes and protects the right to freedom of association.

70. Defendants' coercing SCF to terminate its relationship with its stand-assistant based on the protesters' perception of the stand-assistant violates SCF's right to freely associate.

71. All of the Defendants' actions alleged herein are based on Defendants' perception of SCF's affiliation with a political group wholly independent of the Market, and Defendants' actions violate SCF's right to freely associate.

72. Defendants' conduct chills and deters vendors from associating with political organizations, even outside the Market, lest they be subject to retaliation for their associations.

73. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**COUNT IV – Violation of the Equal Protection Clause of the Fourteenth Amendment**

74. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

75. The Equal Protection Clause of the Fourteenth Amendment requires that a government entity treat similarly situated persons alike and that regulations apply with equal force to similarly situated persons.

76. Defendants' imposed a time, place, and manner restriction on SCF's discourse in the Market.

77. Defendants' elected to not enforce the same time, place, and manner restriction against those that were, specifically, targeting and speaking out against SCF.

78. The discrimination against SCF is sufficient, standing alone, to constitute a violation of the Equal Protection Clause, but here Defendants' conduct goes beyond that. Defendants' selective enforcement of its time, place, and manner restrictions is intended to, and does, cause financial loss to SCF and coerce SCF to vacate the Market.

79. Defendants' conduct constitutes a violation of SCF's right to Equal Protection of the laws.

80. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**COUNT V – Deprivation of Liberty without Due Process of Law**

81. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

82. The Due Process Clause of the Fourteenth Amendment prohibits a government entity from censoring speech pursuant to vague standards that grant unbridled discretion.

83. The arbitrary determination by Market officials as to what is and is not forbidden speech violates this standard.

84. Citizens of common intelligence must, therefore, guess as to whether their particular form of expression will be of the type that Market officials prohibit in the Market, allow in the Market, or, indeed, publicly endorse in the Market.

85. Citizens of common intelligence must guess as to whether they will be required to pay a fee to distribute information in the Market or not, and as to whether they will be required to restrict their expression to "Information Alley" or will be free to express themselves throughout the vending space in the Market.

86. Defendants' conduct constitutes a violation of SCF's right to Due Process.

87. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right.

**COUNT VI – Deprivation of Property without Due Process of Law**

88. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

89. The Due Process Clause of the Fourteenth Amendment prohibits a government entity from depriving a citizen of property without due process of law.

90. SCF has a property right in its vending space. The vending space is let to SCF pursuant to the Farm Vendor Contract. The Farm Vendor Contract incorporates the Farm Vendor Handbook into its terms.

91. The Farm Vendor Handbook employs a Vendor Point System in order to allocate space at the Market. The Vendor Point System is effectively a system of seniority which allows vendors who have participated in the Market most consistently to reserve the favored vending spaces in the future.

92. As one of the vendors with the most points, SCF enjoys a prime and valuable vending space within the Market.

93. Defendants' conduct has deprived SCF of the use and value of its vending space.

94. Defendants' conduct has deprived SCF of the future use and future value of its vending space.

95. Such deprivation required due process of law which was denied to SCF.

96. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**COUNT VII – Violation of Article 1, Section 9 of the Indiana Constitution**

97. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

98. Article 1, Section 9 of the Constitution of the State of Indiana prohibits restraint on the free interchange of thought or opinion and prohibits restraint on the right to speak freely on any subject whatever.

99. Defendants' prior restraint of SCF's engaging in political discourse in the Market constitutes an unconstitutional restraint on the free interchange of thought or opinion.

100. Defendants' allowed a "Heckler's Veto" against SCF by permitting parties who were specifically speaking out against SCF to promulgate their thoughts and opinions in the Market while disallowing SCF to do so.

101. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

## IV – Prayer for Relief

**WHEREFORE**, Plaintiff's respectfully request judgment in their favor and against Defendants, a declaratory judgment declaring Defendants' conduct unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States of America, a declaratory judgment declaring Defendants' conduct unconstitutional under Article 1, Section 9 of the Constitution of the State of Indiana, nominal damages, compensatory damages in an amount determined by the jury, costs and reasonable attorneys' fees in accordance with 42 U.S.C. 1988, and all other relief as is just and proper.

Respectfully submitted,

ORZESKE-BLACKWELL, P.C.

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese, Atty No.: 33756-49
Jacob Catt, Atty No.: 35788-49

ORZESKE - BLACKWELL, P.C.
50 East 91st Street, Suite 104
Indianapolis, IN  46240
Telephone: (317) 846-4000
Telecopier: (317) 846-8000
mbruzzese@indylitigation.com
jcatt@indylitigation.com

*Counsel for Plaintiffs*