| | |
|---|---|
| SCHOONER CREEK FARM,<br>SARAH DYE, and DOUGLAS MACKEY<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BLOOMINGTON, INDIANA,<br><br>And,<br><br>JOHN HAMILTON, in his official capacity<br>As Mayor of the City of Bloomington, Indiana and<br>in his individual capacity,<br><br>And,<br><br>PAULA MCDEVITT, in her official capacity<br>as Administrator of the Bloomington Parks and,<br>Recreation Department in her individual capacity,<br><br>And,<br><br>MARCIA VELDMAN, in her official capacity<br>As the Program Coordination for the Bloomington<br>Community Farmers Market and in her individual<br>capacity,<br><br>Defendants.<br>_____<br><br>CITY OF BLOOMINGTON, INDIANA,<br><br>And,<br><br>JOHN HAMILTON, in his official capacity<br>As Mayor of the City of Bloomington, Indiana and<br>in his individual capacity,<br><br>And,<br><br>PAULA MCDEVITT, in her official capacity | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Cause No. 1:20-cv-00518-RLY-DML |

as Administrator of the Bloomington Parks and,    )
Recreation Department in her individual capacity,    )
                                                    )
And,                                               )
                                                    )
MARCIA VELDMAN, in her official capacity          )
As the Program Coordination for the Bloomington    )
Community Farmers Market and in her individual     )
capacity,                                          )
                                                    )
                    Counter-claim Plaintiffs,      )
                                                    )
        v.                                          )
                                                    )
SARAH DYE, and DOUGLAS MACKEY,                    )
                                                    )
                    Counter-claim Defendants.      )

## ANSWER TO COMPLAINT WITH AFFIRMATIVE DEFENSES
## AND
## COUNTER-CLAIMS

Come now the City of Bloomington, John Hamilton, Paula McDevitt, and Marcia Veldman (collectively, the "Defendants"), by counsel, and answer the plaintiffs' complaint as follows:

### I.      Parties.

1.      Schooner Creek Farm is an unincorporated entity in the agriculture business with principal place of business in Brown County, Indiana.

**ANSWER**:    Based on information and belief, Defendants admit that the real property which Dye and Mackey call "Schooner Creek Farm" is located in Brown County, Indiana. Defendants lack knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 1 of the complaint and, therefore, deny those allegations.

2.      Sarah Dye is a partner in Schooner Creek Farm and a resident of Brown County, Indiana.

**ANSWER:**    Based on information and belief, Defendants admit that Sarah Dye is a

resident of Brown County, Indiana. Defendants lack knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 2 of the complaint and, therefore, deny those allegations.

3.      Douglas Mackey is a partner in Schooner Creek Farm and a resident of Brown County, Indiana.

**ANSWER:**      Based on information and belief, the defendants admit that Douglas Mackey is a resident of Brown County, Indiana. Defendants lack knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 3 of the complaint and, therefore, deny those allegations.

4.      Defendant, City of Bloomington, Indiana, is a municipality located in Monroe County, Indiana.

**ANSWER:**     Defendants admit the allegations in paragraph 4 of the plaintiffs' complaint

5.      Defendant, John Hamilton, is the duly elected mayor of the City of Bloomington and its chief executive agent.

**ANSWER:**     Defendants admit that John Hamilton is the duly elected mayor of the City of Bloomington and the city "executive." Defendants deny all other allegations in paragraph 5 of the complaint.

6.      Defendant, Paula McDevitt, is the duly appointed Administrator of the Bloomington Parks and Recreation Department.

**ANSWER:** Defendants admit the allegations in paragraph 6 of the complaint.

7.     Defendant, Marcia Veldman, is the duly appointed Program Coordinator for the Bloomington Community Farmers' Market.

**ANSWER:** Defendants admit the allegations in paragraph 7 of the complaint.

## II.     Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The claims herein arise under the First Amendment to the Constitution of the United States, the Fourteenth Amendment to the Constitution of the United States, and Article One of the Constitution of the State of Indiana.

**ANSWER**:     Defendants admit the Court has subject matter jurisdiction to entertain the claims asserted in this action but deny that Plaintiffs' claims have merit.

9.     This Court has personal jurisdiction of the Defendants because the Defendants are located within this District, and engaged in wrongdoing in this District.

**ANSWER**:     Defendants admit the Court has personal jurisdiction over them but deny that they engaged in wrongdoing.

10.     Venue is proper in this District under 28 U.S.C. § 1391 (b)(1) & (2).

**ANSWER**:     Defendants admit that venue is proper in this Court

### III.     Factual Background

11.     SCF is a family operated farm. Its primary produce is vegetable products; Snap Peas, Cucumbers, Sweet Potatoes, and the like.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11 of the complaint and, therefore, deny those allegations.

12.     SCF's primary source of income is the sale of its produce at the Bloomington Community Farmer's Market ("Market").

**ANSWER**:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12 of the complaint and, therefore, deny those allegations.

13.     The Market is, quite literally, the public square, and exists as a traditional public forum within the City of Bloomington.

**ANSWER**:     Defendants deny the allegations in paragraph 13 of the complaint.

14.     SCF has rented vending space at the Market for approximately a decade.

**ANSWER:**   Defendants admit the allegations in paragraph 14 of the complaint.

15.     The Market is operated by the Bloomington Parks and Recreation Department with input from the Farmers Market Advisory Council.

**ANSWER:**   Defendants admit the allegations in paragraph 15 of the complaint.

16.     As a vendor at the Market, SCF's conduct within the Market is governed, in part,

by the <u>Bloomington Community Farmers' Market Farm Vendor Contract</u> and the <u>Farm Vendor Handbook.</u>

**ANSWER:**    Defendants admit the allegations in paragraph 16 of the complaint.

17.    On or about May, 2019, various non-parties to this suit, via their social media accounts, publicly alleged SCF and its proprietors were Nazis and/or white supremacists.

**ANSWER:**    Based on information and belief, Defendants admit the allegations in paragraph 17 of the complaint.

18.    The defamatory statements continued, and still continue, to circulate around social media. Ultimately, SCF, Ms. Dye, and Mr. Mackey were doxed[1] on or about June 1, 2019.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 of the complaint and, therefore, deny those allegations.

19.    On June 8, 2019, following the doxing, protestors began attending the Market. The protesters would position themselves in front of the SCF vending space and solicit a boycott of SCF.

**ANSWER:**    Defendants admit that on June 8, 2019, certain protestors attended the market, positioned themselves near the SCF vending space, and solicited a boycott of SCF. Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations in paragraph 19 of the complaint and, therefore, deny those allegations.

---

[1] Dox: to publicly identify or publish private information about (someone) especially as a form of punishment or revenge. *www.merriam-webster.com/dictionary/dox*

20.     On June 8, 2019, SCF requested the assistance of the City in removing the protesters through Program Coordinator, Marcia Veldman. Ms. Veldman advised SCF that the City would not take action against the protesters.

**ANSWER:**     Defendants deny the allegations in paragraph 20 of the complaint.


21.     Throughout June and July, 2019 the protesters continued to appear at the Market each Saturday and continually escalated their efforts to solicit a boycott of SCF and interfere with SCF's commerce.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of allegations in paragraph 21 of the complaint and, therefore, deny those allegations.


22.     On June 17, 2019, Bloomington Mayor, John Hamilton, made a public statement regarding the Market in which he accepted the allegations regarding SCF's political positions as true, lamented the restrictions of the First Amendment placed on governments, and called for the community to intervene where the local government could not. From his statement, in relevant part:

> Recent allegations about a vendor at our City's farmers market having white-supremacist affiliations have alarmed and activated our community. Including me, personally and as Mayor…
>
> The City will not tolerate any vendor displays or behaviors at the market inconsistent with [the] fundamentally welcoming environment. We will vigorously protect against any behaviors that threaten those values. On the other hand, we must also comply with the US Constitution's First Amendment, which prohibits governments from restricting individuals' rights to believe and speak as they choose, within very wide ranges, including those who sell at (or attend) a City-run farmers market.
>
> Repeatedly and consistently throughout the last century, the US

> Supreme court has said that government may not silence or punish people for disfavored beliefs, in cases involving viewpoints including Communists, anarchists, civil rights protesters, and Nazis. Our constitutional government's prescription for odious speech isn't government control or censorship. It's MORE SPEECH. That is, our community, including this Mayor, can make clear our values, even when our government cannot directly intervene.

**ANSWER:**     Defendants admit that the above-indented paragraph consists of excerpts from a statement made by the Mayor on about June 17, 2019. Defendants deny all other allegations in paragraph 22 of the complaint.

23.     On or about June 17, 2019, a public petition was submitted to the Market through its Farmers' Market Advisory Counsel [sic] seeking the expulsion of SCF from the Market ("Petition").

**ANSWER**:     Defendants admit the allegations in paragraph 23 of the complaint.

24.     The Petition alleged that SCF and Ms. Dye held a political position that the petitioners believed created a hostile and unsafe atmosphere in the Market.

**ANSWER**:     Defendants admit the petition alleged that the owners of SCF and specifically, Sarah Dye, held certain political views that the petitioners believed created a hostile and unsafe atmosphere in the Market. Defendants deny all other allegations in paragraph 24 of the complaint.

25.     The Petition threatened its petitioners would file a complaint with the Indiana State Department of Health and the US Department of Agriculture Assistant Secretary of Civil Rights against the Market if the Market failed to take action against SCF.

**ANSWER:**  Defendants deny the allegations in paragraph 25 of the complaint.

26.     Publicly available copies of the Petition omit the signatories other than the author, activist Abby Ang, however, the Petition states to have the support of 230 residents.

**ANSWER**:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 26 of the complaint.

27.     On June 27, 2019 the City published its, "Clarification of Long-standing Rules of Behavior for the Bloomington Community Farmer's Market".

**ANSWER**:     Defendants admit the allegations in paragraph 27 of the complaint.

28.     The Long-Standing Rules of Behavior provide the time, place, and manner restrictions on political speech in the Market. The Rules of Behavior state that Signs and distribution of literature by the public is permitted in designated areas around the Market boundaries, but prohibited within the Vendor area.

**ANSWER:**  Defendants admit the rules provide the time, place, and manner restrictions on speech in the Market.  Defendants further admit that the rules provide that signs and the distribution of literature at the Market by the public can occur in certain areas, but is not permitted in certain areas, including where the farm vendors are set up.  Defendants deny all other allegations in paragraph 28 of the complaint.

29.     The Rules of Behavior also outline the steps the City is required to take to enforce its time, place, and manner restrictions, stating:

- Interruption of commerce is not permitted;
- Individuals interrupting the Market by yelling or causing a scene is not permitted;
- Market staff will ask any persons causing disruption to relocate to a free speech area;
- If this is not successful market staff or vendor will contact BPD;
- BPD will reiterate request to move if not compliant this will lead to arrest.

**ANSWER:**    Defendants admit the bulleted items in paragraph 29 appear in the rules of behavior relating to customer and vendor interactions.  Defendants deny all other allegations in paragraph 29 of the complaint.

30.    The Rules of Behavior are consistent with the Farm Vendor Handbook which requires that information sharing occur only in a designated area: "Information Alley". Information Alley participants are required to pay a $10 application fee as well as a $10 daily space fee. Information Alley is the designated public forum for expressive activity within the Market; expressive activity is otherwise prohibited in the vending space.

**ANSWER:**    Defendants admit that Information Alley is the designated area in which community groups, organizations, businesses and individuals interested in sharing information may do so and that there is a $10 application fee and a $10 daily space fee.  Defendants deny all other allegations in paragraph 30 of the complaint.

31.    At the Market of July 20, 2019, the ongoing protests escalated further to include members of the self-proclaimed anti fascists, Antifa black bloc. The black bloc protesters, clad in black hoods, black sunglasses, and black masks, blockaded the SCF vending space.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31 of the complaint and, therefore, deny those allegations.

32.     On or about July 31, 2019, Mayor Hamilton announced the Market would be closed for the following two weeks and, again, made a public statement regarding the Market. In this statement, the Mayor announced his support for the boycotters:

> As a community, then, one thing we must do together is fight against racism and bigotry and their legacies, wherever they arise, including at our Farmers' Market. Like many, I have spoken out condemning connections to white supremacy in our market. We know active community members have organized education and advocacy campaigns, as well as economic responses including boycotts, and I am fully supportive of those efforts.

**<u>ANSWER:</u>**     Defendants admit that on or about July 31, 2019, the Mayor announced that the Market would be closed for the following two weeks.  The Defendants also admit that the above-indented paragraph consists of excerpts from a statement made by the Mayor on about July 31, 2019.  Defendants deny all other allegations in paragraph 32 of the complaint.


33.     During the two-week closure of the Market, local activist group, No Space for Hate ("NSFH"), a group organized specifically to respond to SCF's presence in the Market, posted numerous articles and reposts on its website and on its Facebook page calling for boycotts of SCF, publishing photos of Ms. Dye, and implying SCF was somehow linked to white supremacist violence elsewhere in the United States.

**<u>ANSWER</u>**:     Defendants lack knowledge of information sufficient to admit the truth of the allegations in paragraph 33 of the complaint.


34.     On August 13, 2019, Mayor Hamilton, again, made a public statement regarding the Market. The Mayor announced the pending reopening of the Market on August 17, 2019. In his statement, Mayor Hamilton analogized the "local situation" to recent instances of mass

shootings in El Paso, Texas and Dayton, Ohio and called for a community response:

> Our community market faces a community challenge that must be met with a community response…Of particular note are the focused efforts from advocates and volunteers, organized as "No Space for Hate," directly to address issues at the Farmers' Market.

**ANSWER**:   Defendants admit that on or about August 13, 2019, the Mayor made a public statement announcing the Market would reopen on August 17, 2019.  The Defendants admit that the above-indented paragraph consists of excerpts from a statement made by the Mayor on about August 13, 2019.  Defendants deny all other allegations in paragraph 34 of the complaint.

35.   Mayor Hamilton's repeated public statements endorsing those who would harass SCF in an effort to force them from the Market displays a callous disregard for the Plaintiff's Constitutional rights.

**ANSWER:**   Defendants deny the allegations in paragraph 35 of the complaint.

36.   The Market provided NSFH with an area to set up a tent as well as information about where NSFH could disseminate information. The Market waived the fees normally required of groups who wish to disseminate information at the Market.

**ANSWER:**   Defendants deny the allegations in paragraph 36 of the complaint.

37.   On August 17, 2019, the Market reopened as scheduled. Protesters, apparently members of NSFH, attended the market to solicit a boycott of SCF.

**ANSWER:**   Defendants admit that the Market reopened on August 17, 2019.  Defendants admit that protesters appearing to solicit a boycott of SCF attended the market on that date.  Defendants lack knowledge or information sufficient to form a belief about the truth of the other

allegations in paragraph 37 of the complaint and, therefore, deny those allegations.

38.     The NSFH protesters marched back and forth in front of the SCF vending space, or simply stood still in front of the space, wearing purple t-shirts with a quote by political activist, Cornel West, on the front and the phrase, **"Boycott Schooner Creek-Defund White Supremacy"** on the back. This particular subset of protesters has been referred to as "The Purple Shirt Brigade" in local media.

**ANSWER:**     Defendants admit that protestors wearing purple t-shirts with the quoted phrase were in the area of SCF's booth space and that those protestors have been referred to as "The Purple Shirt Brigade" by the local media.  Defendants deny all other allegations in paragraph 38 of the complaint.

39.     The Purple Shirt Brigade formed a physical barrier restricting Market shoppers' access to SCF vending space and attempted to persuade shoppers transacting with SCF to cease doing business with SCF.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39 of the complaint and, therefore, deny those allegations.

40.     The Purple Shirt Brigade was allowed to disrupt commerce at the Market and protest at the Market in violation of the Market Rules of Behavior. The City refused to enforce its own time, place, and manner restrictions and allowed NSFH and the Purple Shirt Brigade to proceed with its boycott.

**ANSWER:**     Defendants deny the allegations in paragraph 40 of the complaint.

41.     Program Coordinator, Marcia Veldman, acknowledged in an interview on September 23, 2019 she chooses to selectively enforce the Market's time, place, and manner restrictions in favor of The Purple Shirt Brigade.

**ANSWER:**   Defendants deny the allegations in paragraph 41 of the complaint.


42.     The Purple Shirt Brigade and NSFH have actively protested at each and every Saturday Market since, at least, August 17, 2019.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 42 of the complaint.


43.     SCF has repeatedly requested the City uniformly enforce its time, place, and manner restrictions in the Market; the City has repeatedly declined to do so to SCF's detriment.

**ANSWER:**   Defendants deny the allegations in paragraph 43 of the complaint.


44.     The City responded to the repeated disruptions in the Market, not by enforcing its Rules of Behavior against the protesters, but by having the Bloomington Police Department ask SCF to relocate its vending space from its prime, center-Market location to a space on the periphery of the Market.

**ANSWER:**   Defendants deny the allegations in paragraph 44 of the complaint.


45.     The City further responded to the repeated disruptions in the Market, by coercing SCF into terminating its relationship with its longtime stand-assistant alleging that the mere presence of the stand-assistant made the protesters uncomfortable. The stand assistant was absent

from the Market for several weeks and his relationship with SCF was only restored by SCF's request to the City through counsel.

**ANSWER:**   Defendants deny the allegations in paragraph 45 of the complaint.

46.    On September 12, 2019, the City requested SCF attend a mediation with City officials.  At the mediation, the City requested that SCF refrain from posting political signage in its vending space. SCF has complied with the City's request.

**ANSWER:**   Defendants deny the allegations in paragraph 46 of the complaint.

47.    The Defendants have allowed the Purple Shirt Brigade, at all times, to display its political signage in the vending area of the Market, including the area directly in front of and around SCF's vending space.

**ANSWER:**   Defendants deny the allegations in paragraph 47 of the complaint.

48.    At the mediation, the City requested that SCF refrain from advocating for any political position in a manner that would suggest the position is endorsed by the Market.

**ANSWER:**   Defendants deny the allegations in paragraph 48 of the complaint.

49.    The Defendants have publicly endorsed the political activism in the Market by the Purple Shirt Brigade and NSFH.

**ANSWER:**   Defendants deny the allegations in paragraph 49 of the complaint.

50.    At the mediation, the City requested that SCF refrain from any political discourse

of any kind at the Market, unless the discourse was restricted to the Information Alley.

**ANSWER:** Defendants deny the allegations in paragraph 50 of the complaint.


51.     The Defendants have allowed, and continue to allow, The Purple Shirt Brigade and NSFH to engage in its political discourse, discourse specifically targeted at SCF, outside of Information Alley, within the Market vending space, and in violation of the City's own, published, time, space, and manner restrictions on public speech in the Market.

**ANSWER:** Defendants deny the allegations in paragraph 51 of the complaint.


52.     Where the City could not, as Mayor Hamilton stated, "directly intervene" against SCF, it has instead indirectly intervened through its selective enforcement of its own rules. It has done so to SCF's detriment and in violation of the First and Fourteenth Amendments to the Constitution of the United States of America and in violation of Article One, Section 9 of the Constitution of the State of Indiana.

**ANSWER:** Defendants deny the allegations in paragraph 52 of the complaint.


53.     SCF, Sarah Dye, and Douglas Mackey seek redress for the deprivation of their rights, privileges, and immunities secured by the Constitution of the United States of America by the Constitution of the State of Indiana as follows:

**ANSWER:** Defendants acknowledge that the plaintiffs have brought this lawsuit to seek redress for the claimed deprivation of their rights, but deny that there has been any deprivation of their rights.

## IV – Claims pursuant to 42 U.S.C. 1983

### COUNT 1 - Violation of the Free Speech Clause of the First Amendment

54.     Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:**   Defendants restate and incorporate herein their answers to paragraphs 1 through 53 above.


55.     The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the Constitution of the United States, prohibits viewpoint discrimination by a government entity.

**ANSWER:**   Defendants admit the general statement of law asserted in paragraph 55 of the complaint.


56.     Defendants' prohibiting SCF's political speech in the Market while endorsing that of the protesters including, but not limited to, NSFH and The Purple Shirt Brigade constitutes viewpoint discrimination.

**ANSWER:**    Defendants deny that they have engaged in any viewpoint discrimination and further deny all other allegations in paragraph 56 of the complaint.


57.     Defendants' prohibitions make a distinction based on the motivating ideologies of the speakers, in this case the differing viewpoints between SCF and the groups that boycott SCF.

**ANSWER:**    Defendants deny the allegations in paragraph 57 of the complaint.


58.     Defendants' waiver of the rental fees for NSFH space rental while requiring SCF

to pay a rental fee if it were to utilize an information space imposes a financial burden on SCF based on the perception of their particular view and constitutes viewpoint discrimination. The rental fee is an access barrier which must be reasonable and viewpoint neutral; Defendants' selective waiver is, on its face, not viewpoint neutral.

**ANSWER:**   Defendants deny that they have waived rental fees for NSFH and further deny all other allegations in paragraph 58 of the complaint.


59.   Defendants' selective enforcement of its regulations relating to the time, place, and manner restrictions on speech in the Market based on the perception of the particular views of the speaker constitutes viewpoint discrimination. The content discrimination here is not intended to preserve the purpose of the Market as a public forum, but rather to humiliate SCF and coerce its exit from the Market.

**ANSWER:**   Defendants deny the allegations in paragraph 59 of the complaint.


60.   Defendants' time, place, and manner restrictions on speech in the Market, as applied and enforced, are not narrowly tailored to achieve a compelling government interest.

**ANSWER:**   Defendants deny the allegations in paragraph 60 of the complaint.


61.   Defendants' conduct chills and deters the free expression of differing political viewpoints within the public square and violates SCF's right to Free Speech under the First Amendment to the Constitution of the United States.

**ANSWER:**   Defendants deny the allegations in paragraph 61 of the complaint.

62.     As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**ANSWER:**   Defendants deny the allegations in paragraph 62 of the complaint.


**COUNT II – Violation of the Free Speech Clause of the First Amendment**

63.     Plaintiffs' reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:**   Defendants restate and incorporate herein their answers to paragraphs 1 through 62 above.


64.     The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the Constitution of the United States, prohibits content-based, prior restraint on speech.

**ANSWER:**   Defendants admit the general statement of law asserted in paragraph 64 of the complaint.


65.     Defendants' prohibition on SCF's displaying political signage in the Market based on the Defendants' perception of the content of the signage constitutes prior restraint.

**ANSWER:**   Defendants deny the allegations in paragraph 65 of the complaint.


66.     Defendants' prohibition of SCF's engaging in any political discourse in the Market based on the Defendants' perception of the content of the discourse constitutes prior restraint.

**ANSWER:**   Defendants deny the allegations in paragraph 66 of the complaint.

67.     As a result of the Defendants' conduct SCF has been deprived of a Constitutionally protected right.

**ANSWER:**   Defendants deny the allegations in paragraph 67 of the complaint.


**COUNT III – Violation of the Right to Free Association under the First Amendment**

68.     Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:**   Defendants restate and incorporate herein their answers to paragraphs 1 through 67 above.


69.     The First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment to the Constitution of the United States, recognizes and protects the right to freedom of association.

**ANSWER:**   Defendants admit the general statement of law asserted in paragraph 69 of the complaint.


70.     Defendants' coercing SCF to terminate its relationship with its stand-assistant based on the protesters' perception of the stand-assistant violates SCF's right to freely associate.

**ANSWER:**   Defendants deny the allegations in paragraph 70 of the complaint.


71.     All of the Defendants' actions alleged herein are based on Defendants' perception of SCF's affiliation with a political group wholly independent of the Market, and Defendants' actions violate SCF's right to freely associate.

**ANSWER:**   Defendants deny the allegations in paragraph 71 of the complaint.

72.     Defendants' conduct chills and deters vendors from associating with political organizations, even outside the Market, lest they be subject to retaliation for their associations.

**ANSWER:**  Defendants deny the allegations in paragraph 72 of the complaint.


73.     As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**ANSWER:**     Defendants deny the allegations in paragraph 73 of the complaint.


**COUNT IV – Violation of the Equal Protection Clause of the Fourteenth Amendment**

74.     Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:**     Defendants restate and incorporate herein their answers to paragraphs 1 through 73 above.


75.     The Equal Protection Clause of the Fourteenth Amendment requires that a government entity treat similarly situated persons alike and that regulations apply with equal force to similarly situated persons.

**ANSWER:**     Defendants admit the general statement of law asserted in paragraph 75 of the complaint.


76.     Defendants' imposed a time, place, and manner restriction on SCF's discourse in the Market.

**ANSWER:** Defendants admit the allegations in paragraph 76 of the complaint, but deny the implied allegation that those restrictions were applied to SCF any differently than they were applied to any other vendor in the market.

77.    Defendants' elected to not enforce the same time, place, and manner restriction against those that were, specifically, targeting and speaking out against SCF.

**ANSWER:**    Defendants deny the allegations in in paragraph 77 of the complaint.

78.    The discrimination against SCF is sufficient, standing alone, to constitute a violation of the Equal Protection Clause, but here Defendants' conduct goes beyond that. Defendants' selective enforcement of its time, place, and manner restrictions is intended to, and does, cause financial loss to SCF and coerce SCF to vacate the Market.

**ANSWER:**    Defendants deny the allegations in in paragraph 78 of the complaint.

79.    Defendants' conduct constitutes a violation of SCF's right to Equal Protection of the laws.

**ANSWER:**    Defendants deny the allegations in in paragraph 79 of the complaint.

80.    As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected rights and has also suffered pecuniary damages.

**ANSWER:**    Defendants deny the allegations in in paragraph 80 of the complaint.

**COUNT V – Deprivation of Liberty without Due Process of Law**

81.     Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:**   Defendants restate and incorporate herein their answers to paragraphs 1 through 80 above.


82.     The Due Process Clause of the Fourteenth Amendment prohibits a government entity from censoring speech pursuant to vague standards that grant unbridled discretion.

**ANSWER:**   Defendants admit the general statement of law asserted in paragraph 82 of the complaint.


83.     The arbitrary determination by Market officials as to what is and is not forbidden speech violates this standard.

**ANSWER:**   Defendants deny the allegations in in paragraph 83 of the complaint.


84.     Citizens of common intelligence must, therefore, guess as to whether their particular form of expression will be of the type that Market officials prohibit in the Market, allow in the Market, or, indeed, publicly endorse in the Market.

**ANSWER:**   Defendants deny the allegations in in paragraph 84 of the complaint.


85.     Citizens of common intelligence must guess as to whether they will be required to pay a fee to distribute information in the Market or not, and as to whether they will be required to restrict their expression to "Information Alley" or will be free to express themselves throughout the vending space in the Market.

**ANSWER:** Defendants deny the allegations in in paragraph 85 of the complaint.

86. Defendants' conduct constitutes a violation of SCF's right to Due Process.

**ANSWER:** Defendants deny the allegations in in paragraph 86 of the complaint.

87. As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right.

**ANSWER:** Defendants deny the allegations in in paragraph 87 of the complaint.

### COUNT VI – Deprivation of Property without Due Process of Law

88. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:** Defendants restate and incorporate herein their answers to paragraphs 1 through 87 above.

89. The Due Process Clause of the Fourteenth Amendment prohibits a government entity from depriving a citizen of property without due process of law.

**ANSWER:** Defendants admit the general statement of law asserted in paragraph 89 of the complaint.

90. SCF has a property right in its vending space. The vending space is let to SCF pursuant to the Farm Vendor Contract. The Farm Vendor Contract incorporates the Farm Vendor Handbook into its terms.

**ANSWER:** Defendants deny the allegations in paragraph 90 of the complaint.

91.     The Farm Vendor Handbook employs a Vendor Point System in order to allocate space at the Market. The Vendor Point System is effectively a system of seniority which allows vendors who have participated in the Market most consistently to reserve the favored vending spaces in the future.

**ANSWER:**   Defendants admit that the Farm Vendor Handbook employs a point system which allows vendors with seniority to select their spaces.  Defendants deny all other allegations in paragraph 91 of the complaint.

92.     As one of the vendors with the most points, SCF enjoys a prime and valuable vending space within the Market.

**ANSWER:**   Defendants deny the allegations in paragraph 92 of the complaint.

93.     Defendants' conduct has deprived SCF of the use and value of its vending space.

**ANSWER:**   Defendants deny the allegations in paragraph 93 of the complaint.

94.     Defendants' conduct has deprived SCF of the future use and future value of its vending space.

**ANSWER:**   Defendants deny the allegations in paragraph 94 of the complaint.

95.     Such deprivation required due process of law which was denied to SCF.

**ANSWER:**   Defendants deny the allegations in paragraph 95 of the complaint.

96.     As a result of Defendants' conduct SCF has been deprived of a Constitutionally

protected right and has also suffered pecuniary damages.

**ANSWER:** Defendants deny the allegations in paragraph 96 of the complaint.

**COUNT VII – Violation of Article 1, Section 9 of the Indiana Constitution**

97. Plaintiffs reallege all matters set forth above and incorporate the allegations herein.

**ANSWER:** Defendants restate and incorporate herein their answers to paragraphs 1 through 96 above.

98. Article 1, Section 9 of the Constitution of the State of Indiana prohibits restraint on the free interchange of thought or opinion and prohibits restraint on the right to speak freely on any subject whatever.

**ANSWER:** Defendants admit the general statement of law asserted in paragraph 98 of the complaint.

99. Defendants' prior restraint of SCF's engaging in political discourse in the Market constitutes an unconstitutional restraint on the free interchange of thought or opinion.

**ANSWER:** Defendants deny the allegations in paragraph 99 of the complaint.

100. Defendants' allowed a "Heckler's Veto" against SCF by permitting parties who were specifically speaking out against SCF to promulgate their thoughts and opinions in the Market while disallowing SCF to do so.

**ANSWER:** Defendants deny the allegations in paragraph 100 of the complaint.

101.    As a result of Defendants' conduct SCF has been deprived of a Constitutionally protected right and has also suffered pecuniary damages.

**ANSWER:**    Defendants deny the allegations in paragraph 101 of the complaint.


WHEREFORE, Defendants pray that: (a) Plaintiffs take nothing by way of their complaint; (b) the Court enters a judgment in favor of Defendants and against Plaintiffs; (c) the Court award Defendants their costs in this action; and (d) the Court grants Defendants all other relief just and proper in the premises.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses:

1.    Plaintiffs' complaint fails to state a claim upon which relief can be granted.

2.    Schooner Creek is not a legal entity that can sue or be sued and is not a proper party to this lawsuit.

3.    Schooner Creek lacks standing to pursue the claims in this action.

4.    Plaintiffs have contractually agreed not to sue the defendants and have waived, released, and discharged their claims in this action.  Plaintiffs' claims are therefore barred.

5.    The doctrine of qualified immunity immunizes Hamilton, McDevitt, and Veldman from the claims asserted against each them in their individual capacities under 42 U.S.C. § 1983.

6.    There is no right of action for money damages under the Indiana Constitution, and Plaintiffs' state law claims are otherwise barred by common law immunity and the statutory immunities afforded by the Indiana Tort Claims Act, including but not limited to Indiana Code § 34-13-3-3(7) and (8).

7.    Plaintiffs' state law claims against Hamilton, McDevitt, and Veldman in their

personal capacities are barred by Indiana Code § 34-13-3-5(b).

8.     Plaintiffs' claims may barred by the doctrines of equitable or judicial estoppel.

9.     Plaintiffs have contractually agreed to indemnify the defendants with respect to any judgment or settlement of this action.  As a result, Plaintiffs have no damages.

10.    Plaintiffs have failed to mitigate their damages.


WHEREFORE, Defendants pray that: (a) Plaintiffs take nothing by way of their complaint; (b) the Court enters a judgment in favor of Defendants and against Plaintiffs; (c) the Court award Defendants their costs in this action; and (d) the Court grants Defendants all other relief just and proper in the premises.


## COUNTER-CLAIMS

Come now the City of Bloomington, John Hamilton, Paula McDevitt, and Marcia Veldman (collectively, the "Counter-claim plaintiffs"), by counsel, and assert the following counter-claims:

### Jurisdiction and Venue

1.     The Court has supplemental jurisdiction over these counter-claims under 28 U.S.C. § 1367(a) because they are so related to the plaintiffs' claims that they form part of the same case and controversy under Article III of the United States Constitution.

2.     Venue in this Court is proper under 28 U.S.C. § 1391(b).

### Parties

3.     The City of Bloomington is a political subdivision of the State of Indiana.

4.     At all relevant times, John Hamilton was (and still is) is the duly elected Mayor of the City of Bloomington.

5.      At all relevant times, Paula McDevitt was (and still is) an employee of the City of Bloomington and serves as the Administrator of the City of Bloomington's Parks and Recreation Department.

6.      At all relevant times, Marcia Veldman was (and still is) an employee of the City of Bloomington and serves as the Program Coordinator for the City's Farmer's Market.

7.      Sarah Dye is a natural person and resident of Brown County, Indiana.

8.      Douglas Mackey is a natural person and resident of Brown County, Indiana.

**Facts**

9.      On or about February 25, 2019, both Sarah Dye and Douglas Mackey affixed their signatures to and thereby entered into a contract with the City of Bloomington titled "2019 Bloomington Community Farmers' Market Farm Vendor Contract" (hereafter, "2019 Contract"), a true and correct copy of which is attached as Exhibit A.

10.     In the 2019 Contract, Dye and Mackey are referred to as "Vendors."

11.     In consideration for the privilege of participating in the 2019 Bloomington Community Farmers' Market, Dye and Mackey, as Vendors, agreed to the provisions of the 2019 Contract, including but not limited to the language in paragraph 8 titled "Covenant Not to Sue" and paragraph 10 titled "Liability and Indemnification."

12.     Paragraph 8 of the 2019 Contract provides:

> **8.  COVENANT NOT TO SUE**
> The Vendor will not institute any action or suit at law or in equity against the City or the City's agents or employees as a result of operations under this Agreement.  The Vendor will not aid in the institution or prosecution of any claim for damages, costs, loss of services, expenses or compensation for or on account of any damages, loss or injury to person or property as a result of operation under this Agreement.

13.     Paragraph 10 of the 2019 Contract provides:

> **10  LIABILITY AND INDEMNIFICATION**
> The Vendor is solely responsible for damages from the sale of unsafe and unsound goods.  The Vendor is solely responsible for damages or personal injury resulting from the use of umbrellas and other weather protection devices.  The Vendor hereby agrees to indemnify, hold harmless, release, waive and forever discharge the City of Bloomington, Indiana, its employees, agents, and officers, and the members of the Farmers' Market Advisory Council, for all bodily and personal injuries, including injuries resulting in death, and property damage, claims actions, damages, liabilities and expenses, including reasonable attorneys fees and court costs, which may occur as a result of the Vendor's participation in the Market, whether or not sounding in tort or contract, and whether or not caused by a negligent act or omission of the City of Bloomington, its employees, agents, or officers or Farmers' Market Advisory Council.

14.     On February 14, 2020, Dye and Mackey filed a lawsuit in the United States District Court for the Southern District of Indiana captioned *Schooner Creek Farm, et al., v. City of Bloomington, Indiana, et al*., which is now pending as Cause No. 1:20-cv-518-RLY-DML (hereafter, the "Federal Lawsuit").

15.     The Federal Lawsuit seeks money damages not only from the City, but also from Hamilton, McDevitt, and Veldman personally, for losses that Dye and Mackey claim they sustained as a result of their participation in the 2019 Bloomington Community Farmers' Market.

## Claims

### Count I -- Breach of Contract

16.     The 2019 Contract between the City and Dye and Mackey is a valid contract.

17.     By filing the Federal Lawsuit, Dye and Mackey breached paragraph 8 of the 2019 Contract.

18.     The City is has suffered damages as a result of Dye's and Mackey's breach, including but not limited to the lost time and wages expended by the City's elected officials, employees, and agents in addressing the Federal Lawsuit, including the City's attorneys' fees and costs in defending the Federal Lawsuit.

<u>Count II – Indemnity</u>

19.     The 2019 Contract between the City and Dye and Mackey is a valid contract.

20.     Pursuant to paragraph 10 of the 2019 Contract, Dye and Mackey are contractually obligated to indemnify the attorneys' fees and costs incurred by the City, Hamilton, McDevitt and Veldman in defending the Federal Lawsuit.

21.     Pursuant to paragraph 10 of the 2019 Contract, Dye and Mackey are contractually obligated to indemnify any judgment or settlement of the Federal Lawsuit incurred by the City, Hamilton, McDevitt, and/or Veldman.

22.     Because Dye and Mackey must indemnify the City, Hamilton, McDevitt, and Veldman, Dye and Mackey gain nothing by pursuing the Federal Lawsuit.


WHEREFORE, Counter-claim plaintiffs pray that the Court: (a) enter a judgment in their favor on all of the counter-claims; (b) award them money damages in an amount sufficient to compensate them for the losses and injuries caused by the Federal Lawsuit, including their attorneys' fees and costs; and (d) grant them all other relief that is just and proper in the premises.

Respectfully submitted,


STEPHENSON MOROW & SEMLER

 /s/ *Pamela G. Schneeman*
Pamela G. Schneeman
Attorney No. 18142-53

Attorney for Defendants,
City of Bloomington, Mayor John Hamilton
Paula McDevitt and Marcia Veldman

STEPHENSON MOROW & SEMLER
3077 East 98th Street, Suite 240
Indianapolis, IN 46280
Telephone: (317) 844-3830
Fax: (317) 573-4194
Email: pschneeman@stephlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, a copy of the foregoing ANSWER TO PLAINTIFFS' COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTER-CLAIMS was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

**Michael Jay Bruzzese**
ORZESKE & BLACKWELL, P.C
50 East 91st Street
Suite 104
Indianapolis, IN 46240
Email: Mbruzzese@indylitigation.com

**Jacob Alexander Catt**
ORZESKE & BLACKWELL, P.C
50 East 91st Street
Suite 104
Indianapolis, IN 46240
Email: jcatt@indylitigation.com

  s/*Pamela G. Schneeman*
Pamela G. Schneeman

STEPHENSON MOROW & SEMLER
3077 East 98th Street, Suite 240
Indianapolis, IN 46280
Phone: 317-844-3830
Fax: 317-573-4194
Email: pschneeman@stephlaw.com